IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff-Respondent,

v.                                                           CIV 12-0801 MCA/KBM
                                                              CR 09-2054 MCA

NATHAN DeBREW, Sr.

    Defendant-Movant.

# PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

      A jury convicted Petitioner of a drug trafficking charge and he received the mandatory minimum sentence of 120 months incarceration. *United States v. DeBrew,* 419 F. App'x 877 (10th Cir. 2011). This matter is before the Court on Petitioner's *pro se* motion seeking habeas relief under 28 U.S.C. § 2255 and the United States' response. *See Docs. 1, 6.*[1] Petitioner's free-form petition and reply explain the basis for his claims, and his reply directly responds to several of the United States' arguments. These documents raise the specter of whether Petitioner is receiving assistance from an attorney.[2] All of the issues can be resolved on the pleadings, and the record conclusively establishes that Petitioner is not entitled to relief. Accordingly, I find

---

[1] The federal form labels a § 2255 action as initiated by a "motion," but the Tenth Circuit and this Court refer to the document as a "petition" and to the inmate as "petitioner." *See, e.g., United States v. Viera,* 674 F.3d 1214, 1217 (10th Cir. 2012); *United States v. Nick,* CIV11-0217 MCA/KBM (Doc. 14). Unless otherwise noted, citations to *"Doc."* are the documents filed in this civil action.

[2] *See, e.g., Patton v. West,* 276 F. App'x 756, 757 (10th Cir. 2008) ("'Contrary to plaintiff's self-proclaimed 'pro se' status, her briefs, both to this court and to the district court, with the possible exception of her opening brief on appeal, are clearly written by someone with formal legal training [and] an attorney who "ghost writes" a brief for a pro se litigant may be subject to discipline both for a violation of the rules of professional conduct and for contempt of court."); *see also Duran v. Carris,* 238 F. 3d 1268, 1273 & n.2 (10th Cir. 2001) (unethical for attorney to provide ghostwriting assistance unless client commits to disclosing the assistance to this Court on filing, but disclosure of the drafting assistance alone is insufficient to satisfy ethical obligations to a court if attorney continues to provide assistance throughout the course of litigation).

that an evidentiary hearing is not necessary. *See, e.g., United States v. Smith,* 421 F. App'x 889, 902 (10th Cir. 2011).

## I. Factual Background

As the Tenth Circuit summarized on direct appeal,

> To make a long story short, law enforcement officials at the eastbound Lordsburg, New Mexico, Port of Entry uncovered 260 kilograms of marijuana in the cargo hold of a tractor trailer driven by Defendant Nathan Debrew, Sr. A jury subsequently convicted Defendant on one count of possession with intent to distribute 100 kilograms or more of marijuana in violation of 21 U.S.C. § 841, and one count of conspiracy to commit the same in violation of 21 U.S.C. § 846. The district court sentenced Defendant to 120–months imprisonment.

*United States v. DeBrew,* 419 F. App'x 877, 878 (10th Cir. 2011). In this habeas proceeding, Petitioner's sole ground for relief is that he was the "victim of selective enforcement of the law, based on his race," in violation of the "Due Process Clause of the Fifth Amendment and the Equal Protection Clause of the Fourteenth Amendment." *Doc. 1* at 1-2. Specifically, he alleges that New Mexico Motor Transportation Division Officer Ben Strain,

> who has been found by this Court to have, as a matter of routine practice, singled out black truck drivers for more vigorous inspection in violation of . . . the law, did so also in the instant case.
>
> Petitioner was spotted by Officer Strain after being stopped at the [Point of Entry] by another officer. There was nothing other than the color of Petitioner's skin, that distinguished him from other truck drivers passing through the POE.

*Id.* at 2.

During the criminal proceedings, defense counsel for both Petitioner and his co-defendant son moved to suppress for reasons other than selective enforcement. *See United States v. DeBrew,* CR-09-2054-MCA (Doc. 35 – Petitioner's motion to suppress for warrantless

search exceeded scope of regulatory search, subsequently-discovered firearm in a box fruit of poisonous tree, and Petitioner's statements were fruits and involuntary); *id.* (Doc. 50 – son's motion to suppress for lack of probable cause, opening box exceeded scope of regulatory search, and son's statements were coerced).  When Petitioner and Officer Strain testified at the motion to suppress hearing, neither alluded to race.  Officer Strain identified the irregularities that piqued his suspicions.  *Id.* (Doc. 105 – for example, geographically impossible entry log book, handwritten bill of lading with illegible description of contents, verbal description of load inconsistent with paperwork and trailer contents, hands trembling, comments interpreted as attempt to misdirect officers' attention,  blankets covering boxes).  Petitioner briefly testified about his ownership interest in the vehicle and cross-examination stayed confined to that topic.  *See id.* at 110-114.

      Now District Judge Armijo denied the motions in a comprehensive opinion.  *See id.* (Doc. 131).  Petitioner's arguments in his direct appeal challenge to the suppression decision did not mention selective enforcement.  *See United States v. DeBrew,* No. 10-2120 (Docs. 01018483521, 01018549695).  The Tenth Circuit found District Judge Armijo's ruling "thorough and proper," and specifically noted that "Defendant's focus on the inspector's subjective intentions and motivations is wholly misplaced." *DeBrew,* 419 F. App'x at 880.

## II.  Analysis

### A.  Rule 60 v. Habeas Proceeding

     Petitioner recognizes that his petition may not be timely and asked the Court to alternatively construe it as a motion under Fed. R. Civ. P. 60(b)(6), which, of course, has no associated statute of limitations, and need only be made within a "reasonable" time.  Judge Armijo previously dismissed the Rule 60 aspect of the petition.  *See Doc. 3*.  "A party may not

use Rule 60(b)(6)'s 'any other reason' catchall as a way to avoid the one-year time limit if that limit would otherwise be applicable." *Tilley v. Fish,* ___ F. App'x ___, ___, No. 12-7029, 2012 WL 3089709, at *2 (10th Cir. Jul. 31, 2012).

### B. Timeliness

A one-year statute of limitations applies to habeas actions under § 2255, and the period commences from the later of four triggering events. Two potentially apply here: "(1) the date on which the judgment of conviction becomes final . . . (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(1)-(4). The United States asserts that the "supporting facts" option does not apply because the decisions Petitioner relies upon were issued months before the one-year period ran. *See Doc. 6* at 13-14. It also correctly calculates when the period began to run under the "conviction became final" option, and argues that Petitioner filed nine days late on July 20, 2012. *See id.* at 6.

However, the United States uses the date that the Clerk's Office received and file-stamped the petition for the filing date. *See, e.g., Doc. 1* at 18. Petitioner signed the petition "under the penalties of perjury" on July 11, 2012, the last day of the limitations period according the United States' calculations. *Id.* at 17; *see also Doc. 6* at 6. As such, the "prison mailbox rule" potentially applies. *See, e.g., Mitchell v. Medina,* ___ F. App'x ___, ___, No. 12-1217, 2012 WL 2628076 at *2 (10th Cir. Jul. 6, 2012), *petition for cert. filed 9/19/12* (No. 12-6539). Under the rule, timeliness is based on the date Petitioner deposited his petition in the institution's internal mail system, rather than the date the Court received it. *See id.; see also, e.g., Houston v. Lack,* 487 U.S. 266, 270-71, 287 (1988); *Blake v. Aramark Corp.,* ___ F. App'x ___, ___, No. 12-3053, 2012 WL 2899056, at *1 (10th Cir. Jul. 17, 2012).

The "prison mailbox rule" is "rooted in the reality that, unlike other litigants, prisoners do not have the opportunity to oversee the de- livery process personally and should not be penalized for any delay in the prison's mail processing systems." *Blake,* 2012 WL at *1. To invoke the rule, Petitioner is required to provide evidence of the date he placed the petition in the prison mail system "by, for example, submitting either prison mail room logs or a declaration under penalty of perjury "'setting forth the notice's date of deposit with prison officials and attest[ing] that first-class postage was paid.'" *Id*. (quoting *Price v. Philpot,* 420 F.3d 1158, 1165 (10th Cir. 2005); *see also, e.g., United States v. Ceballos-Martinez,* 387 F.3d 1140, 1145 (10th Cir. 2004). Although certain circumstances surrounding Petitioner's signature and petition suggest he could make this showing if afforded the opportunity to do so, his attested signature alone does not link the date of the signature to placement of the petition with prison officials or to having tendered it with sufficient postage.[3]

Petitioner's petition and reply only address equitable tolling, and his arguments raise factual issues such as his "contentious relationship" with his trial attorney and that attorney's "abandon[ment] . . . after trial." *Doc. 10* at 2-3; *see also Doc. 1* at 5-6 (same). Both of these documents suggest that Petitioner needed to rely on the *Blackwell* and *Bernard* rulings (discussed later in this opinion) to make his argument, and that he required and received Court intervention to retrieve his file and these other case documents, all of which contributed to the delay in filing. However, nothing in the Court's present records indicate any such Court assistance. But, rather than delaying these proceedings further to afford Petitioner the opportunity to make the required showing under the prison mailbox rule and/or to resolve the

---

[3] For example, Petitioner signed under penalty of perjury on July 11, 2012, and that signature was attested by a "case manager" the same day. The envelope that the Court received bears many stamps and a certified mail receipt tracking label. July 11, 2012 fell on a Wednesday, and the postmark (greatly enhanced with a zoom function) appears to be Monday, July 16, 2012. *See Doc. 1* at 17, 18.

factual issues pertaining to equitable tolling, the Court declines to address the timeliness issue and proceeds to an analysis of the merits.

### C. Procedural Default

The United States also argues that the claim is procedurally barred because trial counsel, who also represented Petitioner on direct appeal, could have raised a selective enforcement claim in the trial court and thus preserved it for appeal and then raised it there. *See Doc. 6* at 14. It is generally true that matters not raised on direct appeal will be procedurally defaulted in a habeas proceedings unless the Petitioner can establish either cause and prejudice, or a fundamental miscarriage of justice. However, the United States' argument points to counsel's failure at the trial level which is why he could not have raised selective enforcement on direct review anyway. Counsel would have had to challenge his own ineffectiveness in order to attempt to raise the claim on direct review. Yet, the Tenth Circuit typically will not review ineffective assistance of counsel claims on direct appeal, and directs that those claims should be pursued in habeas proceedings. Furthermore, ineffective assistance of counsel is one way to establish cause to excuse a procedural default. *See, e.g., United States v. McGaughy,* 670 F.3d 1149, 1159-60 (10th Cir. 2012); *United States v. Jordan,* 461 F. App'x 771, 777-78 & n.5 (10th Cir. 2012); *United States v. Geiner,* 443 F. App'x 378, 381-82 (10th Cir. 2011).

Under *Strickland*, Petitioner would be required to demonstrate that counsel's conduct was constitutionally deficient and that but for the conduct, the result of the proceeding would have been different. *See e.g., Strickland v. Washington,* 466 U.S. 668, 687-88 (1984); *Geiner,* 443 F. App'x at 381. A Court need not address procedural default issues when it is easier to decide the claim on the merits. *See, e.g., Nguyen v. Archuleta,* 369 F. App'x 889, 892 (10th Cir. 2010)

(citing *Romero v. Furlong,* 215 F.3d 1107, 1111 (10th Cir. 2000). Here, the merits of the selective enforcement claim, ineffectiveness issues, and the procedural default inquiry overlap.

### D. Claim Affords No Basis For Habeas Relief

As Petitioner mentions, other criminal and civil cases from this district involved claims of selective enforcement against Officer Strain. *See Doc. 1* at 5. The *Blackwell* civil action under 42 U.S.C. § 1983 resulted in District Judge Armijo denying summary judgment to Officer Strain. She did so in part based on statistical evidence that showed a disproportionate frequency of Black truckers being subject to inspections or searches. *See Blackwell v. Denko,* CIV 09-0377 MCA/WPL (Doc. 176 at 4-5). She specifically noted that she was not faced with a "selective prosecution case in which a criminal defendant is seeking to abate a criminal prosecution," the different evidentiary burdens in criminal and civil proceedings, and "that it is possible for Plaintiff's right to equal protection to have been violated even if the actions of Officer Strain did not violate the Fourth Amendment." *Id.* at 5. She reasoned that:

> . . . Officer Strain is known for aggressively interdicting drugs [and] [s]afety inspections provide [him] with an opportunity to search for drugs . . . in the guise of a safe cargo check. Notwithstanding his denial of racial profiling, Officer Strain has been proceeding on the assumption that Black truckers are more likely than White truckers to be involved in transporting illegal drugs. Accordingly, Officer Strain selects Black truckers as a group for inspections at a disproportionately higher rate than their representation in the general population of truckers, and the inspections to which he subjects Black truckers are more intrusive than the inspections to which White truckers are subjected. Officer Strain's practice of selecting Black truckers for more frequent and more intrusive search searches results in a "self-fulfilling prophecy". . . .
>
> At the POE, Officer Strain arrests Blacks at a rate that is twice their representation in the population of truckers passing through the POE, . . . whereas the percentage of Blacks arrested by Officer Strain as the result of patrolling (where, as Dr. Williams hypothesized, it more difficult for Officer Strain to confirm the

>driver's ethnicity prior to initiating law enforcement activity) closely corresponds to the percentage of Black truckers in the population of truckers passing through the POE. . . .
>
>From the foregoing proffered evidence, a reasonable juror could conclude that Officer Strain selects Black truckers for inspections at a disproportionately high rate, and that when Officer Strain has the discretion to determine the level of an inspection, he disproportionately subjects Black truckers to Level II inspections, which include a safe loading check. This conclusion is consistent with Dr. Williams' data tending to show that Black truckers report delays due to inspections and searches much more frequently than truckers who are not Black. . . . The Court is persuaded that on the evidence of record a reasonable juror could find that on August 15, 2008, Officer Strain was motivated by a racially impermissible purpose when he subjected Plaintiff's vehicle to a Level II inspection.

*Id.* at 6-7.

In the *Bernard/Campbell* criminal proceeding involving Officer Strain and a motion to suppress, District Judge Brack found "troubling in itself" Officer Strain's testimony that "100% of the defendants in federal court cases in which he was directly involved [were] Black," and also noted Judge Armijo's statistical findings in her *Blackwell* decision. *United States v. Bernard, et al.,* CR 09-2474 RB (Doc. 161 at 5). Notwithstanding the heavy burden imposed on defendants in selective-enforcement cases, Judge Brack found that Officer Strain's testimony coupled with the evidence in *Blackwell* met that heavy burden by inferentially showing the officer "was motivated by discriminatory purpose." He therefore concluded the defendant established a violation of the "equal protection component of the Due Process Clause of the Fifth Amendment and the Equal Protection Clause of the Fourteenth Amendment." *Id.* at 8-9. Judge Brack recognized neither the Supreme Court nor the Tenth Circuit had addressed "whether suppression is an appropriate remedy for such a violation," and other decisions leave any remedy for equal protection clause violations to civil realm under § 1983. *See id.* at 9-10. He

concluded, however, that "civil remedies would be woefully inadequate to deter future racial discrimination at the Lordsburg . . . While it may seem out of step with current thinking to enlarge the reach of the exclusionary rule, this is an extraordinary case that cries out for an extraordinary remedy." *Id.* at 10.

This Court is also aware of other local cases in this area. The motion to suppress in the *Coleman* criminal proceeding before District Judge Johnson did not involve Officer Strain, but did raise a motion to suppress based on a claim of selective enforcement at the Lordsburg point of entry. *See United States v. Coleman,* CR 10-2603 WJ (Doc. 48). Judge Johnson was aware of Judge Brack's initial ruling that reserved whether a showing of selective enforcement could support suppression, but issued his decision before Judge Brack's final decision discussed above. Judge Johnson also noted an absence of controlling authority and Tenth Circuit decisions indicating that "it would not view [suppression as a remedy] favorably." *Id.* at 2-3. One such case specifically held, as Judge Armijo observed in *Blackwell,* that "'the fact that Defendant may have an equal protection claim against the arresting officer has absolutely no bearing on whether the officer's traffic stop was reasonable under the Fourth Amendment.'" *Id.* at 3 (quoting *United States v. Adkins*, 1 F. App'x 850, 851 (10th Cir. 2001)). Judge Johnson thus held that because the regulatory inspections have been held consistent with the Fourth Amendment and because equal protection claims are distinct, the defendant had "no legal basis to challenge the objective reasonableness of the stop at Lordsburg, and Officer Alvarez' subjective motivations for making the stop are irrelevant. Coleman's remedy is a civil suit against Officer Alvarez and/or the MTD." *Id.* (decided 4/12/11). A few weeks later Judge Browning reached the same decision in a case involving another officer. *See United States v. Harmon,* 785 F. Supp. 2d 1146, 1169-79 (D.N.M. 2011) (decided 5/6/11). He held that "[e]ven if there was evidence that Lucero

purposefully discriminated against Harmon in stopping him, the Court does not believe that suppression would be an appropriate remedy." *Id.* at 1170.

These other suits would not have given Petitioner's trial attorney reason to raise a selective enforcement claim as the basis to suppress. It is true that the *Blackwell* civil suit was filed before the *DeBrew* motions to suppress were filed. However, the motions to exclude and for summary judgment filings in *Blackwell,* and all of the suppression proceedings in *Bernard/Campbell* and *Coleman* and *Harmon,* occurred after Judge Armijo's December 31, 2009 suppression decision in *DeBrew.* And, while some of the District Court proceedings overlapped the direct appeal in *DeBrew,* briefing concluded on appeal before Judge Armijo issued her *Blackwell* summary judgment decision.[4] "As [the Tenth Circuit] held previously, 'clairvoyance is not a required attribute of effective representation' [and] counsel's failure to conduct an investigation and to offer advice . . . with [a] *subsequent* . . . holding . . . in mind—did not amount to constitutionally ineffective performance." *United States v. Geiner,* 443 Fed. App'x 378, 382 (quoting *United States v. Gonzalez–Lerma,* 71 F.3d 1537, 1542 (10th Cir. 1995), *overruled on other grounds by U.S. v. Flowers,* 441 F.3d 900, 903 n. 1 (10th Cir. 2006)).

Furthermore, when the defendant in *Coleman* appealed Judge Johnson's decision on the motion to suppress, he relied on the *Blackwell* and *Bernard/Campell* evidence. *See United States v. Coleman,* No. 11-2173 (Docs. 01018756839, 01018781839). The Tenth Circuit refused to use statistics describing the disparate frequency of Officer Strain's stops of Black truckers to show

---

[4] *See United States v. DeBrew,* CR-09-2054-MCA (Docs. 35, 50, 94, 131) (motions to suppress filed 8/5/09 and 8/31/09; hearing held 10/28/09; decision 12/31/09); *United States v. DeBrew,* No. 10-2120 (Docs. 01018549695, 0101861813) (reply filed 12/12/10, oral argument 4/7/11, decision 4/12/11); *Blackwell v. Denko,* CIV 09-0377 MCA/WPL (Docs. 1, 76, 77, 176) (filed 4/20/09, motions filed 8/6/10, decision 3/24/11); *United States v. Bernard, et al.,* CR 09-2474 RB (Docs 53, 55, 78, 82, 90, 161) (motions to suppress filed 1/15/10 and 1/18/10, evidentiary hearing held 4/26/10, reserved on selective enforcement ruling until after Judge Armijo ruled in *Blackwell*); *United States v. Coleman,* CR 10-2603 WJ (Docs. 17, 35, 48) (motion to suppress filed 10/6/10, hearing held 2/17/11, decision 4/6/11); *United States v. Harmon,* CR 10-1760 JB (motion to suppress filed 1/14/11, hearing held 3/28/11, decision 5/16/11).

discriminatory intent on the part of another officer.  For the purposes of this case, it is significant that the Tenth Circuit did not discuss whether it would allow suppression for an equal protection violation.  The Supreme Court of the United States denied certiorari only a few weeks ago.  Thus, the unsettled state of the law about whether an equal protection claim can be used as the basis to suppress evidence remains unchanged to-date.  *See United States v. Coleman,* ___ F. App'x ___, ___, No. 11-2173, 2012 WL 1764224 (10th Cir. May 18, 2012) , *cert. denied,* No. 12-5542, 2012 WL 3134897 (Oct. 1, 2012).

     Nor can Petitioner show that he has suffered any prejudice because the basis for his claim does not afford him any basis to suppress the evidence underlying his conviction.  What Chief Judge Armijo, Judge Johnson and the Tenth Circuit specifically mentioned in their decisions remains good law in this circuit.  Under *Adkins,* which relies on *Wren v. United States,* 517 U.S. 806 (1996), courts need not entertain evidence "about the arresting officer's alleged history of pretextual stops based on the race of the defendants" on a motion to suppress because "the fact that Defendant may have an equal protection claim against the arresting officer has absolutely no bearing on whether the officer's traffic stop was reasonable under the Fourth Amendment." *Adkins,* 1 F. App'x at 851.  Judge Armjio decided the Fourth Amendment claim adversely to Petitioner, and the Tenth Circuit affirmed.  Petitioner does not challenge that decision and the Tenth Circuit's decision on the subject forecloses relitigation of the subject in habeas.  *See, e.g., United States v. Varela-Ortiz,* 189 Fed. App'x 828, 830 (10th Cir. 2006) ("Because we already disposed of this issue on direct appeal, Mr. Varela-Ortiz may not raise it again in a § 2255 petition.") (citing *United States v. Warner,* 23 F.3d 287, 291 (10th Cir. 1994) and *United States v. Prichard,* 875 F.2d 789, 791 (10th Cir. 1989)).

Also, as the United States discusses, Judge Brack relied on a decision from Iowa to grant suppression, which in turn discusses a Sixth Circuit case that suggests why suppression may be appropriate in the criminal context.  However, more recent Sixth Circuit authority unequivocally disavow that suggestion and, to-date, only secondary sources cite the Iowa decision.  *See* Doc. 6 at 15-22 (and discussion and authorities cited therein); *United States v. Benitez,* 613 F. Supp. 2d 1099, 1102 n. 3 (S.D. Iowa 2009) (citing *United States v. Jennings,* 985 F.2d 562 (6th Cir. 1993) (unpublished disposition)); *see also, e.g., United States v. Cousin,* 448 F. App'x 593 594 (10th Cir. 2012) ("Cousin's challenge to the stop under the 4th Amendment was rejected and he does not challenge that determination.  Thus, the exclusionary rule does not apply.  Under *Nichols,* 'the proper remedy for any [criminal defendant's equal protection] violation is a 42 U.S.C. § 1983 action against the offending officers.' . . . Cousin asks the court to overrule *Nichols,* but we cannot do so in the absence of an intervening change in law or en banc review.") (discussing *United States v. Nichols,* 512 F.3d 789 (6th Cir. 2008), *overruled on other grounds as recognized in United States v. Buford,* 632 F.3d 264, 269 (6th Cir. 2011)).

As the law presently stands, at best Petitioner could pursue a civil remedy for damages, though very recent events in the Tenth Circuit would foreclose that avenue against Officer Strain to the extent that a plaintiff's case was supported by statistical data only.  A panel of the Tenth Circuit reversed Chief Judge Armijo's *Blackwell* decision and remanded with instructions to grant summary judgment in favor of Officer Strain.  It held that the very statistical evidence Petitioner relies upon here, and that Judge Brack partially relied upon, was flawed and legally insufficient to demonstrate discriminatory purpose.  *See Blackwell v. Strain,* ___ F. App'x ___, ___, No. 11-2077, 2012 WL 3939917, at \*\*3-9 (10th Cir. Sept. 11, 2012).

Wherefore,

**IT IS HEREBY RECOMMENDED** that the § 2255 petition be **denied**.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES CHIEF MAGISTRATE JUDGE